Good morning. I hear argument in Delk v. Colvin, and Mr. Kortz. Good morning, all your honors. May it please the Court, my name is David Kortez. I represent the appellant in this case, Scott Delk. The facts of this case are long and involved, and I won't go into them, but I'll deal with them from a certain level of altitude, you might say, and begin by saying this. Our case boils down to this. Mr. Delk is a binge drinker who has major depression, severe bipolar disorder, and anxiety disorder. During his binges, he drinks quite a bit. There's no question of that. The ALJ found Delk disabled on account of DAA. The question is whether that finding is supported by substantial evidence, and whether there is substantial evidence to find that DAA was material to the finding of disability. On that point, SSR 13-2P, and I'll just regard it as 13-2P, 13-2P is directly controlling. That provision regards cases of comorbid instances of mental disease, mental impairment, and alcohol abuse, which this is. 13-2P says that to support a finding that DAA is material, we must have evidence in the case record that establishes that the claimant with co-occurring mental disorders would not be disabled in the absence of DAA. Since this case does concern comorbidity, the ALJ was required to support his finding, as per 13-2P, by citing evidence that Delk would not be disabled in the absence of DAA. There was no substantial evidence cited by the ALJ to support that finding. Not a single doctor said that the evidence showed the materiality of DAA. Quite the contrary. I don't know if you can make it that categorical. As you pointed out, it's a complex record, and even your recitation of bipolarness is conflicted. Doctors had different findings on that. That's correct. But Dr. Dwiggins, I guess it was, saw him at a time when he apparently wasn't under the influence of alcohol and said he was alert, oriented, logical, linear, and goal-directed in his thought processes. He went another time. He was in the hospital and was under a detox program where he wasn't having it. They remarked how he was the leader of the groups and had been proactive in obtaining and maintaining his sobriety. These glimpses of how he functioned when he was not drinking, which is just as sad as can be, I can tell you, because it looks to me from reading the record that was provided that this man is of an age where if he had his exercise, got his weight down, and regularly some coach got him to Alcoholics Anonymous, I think he could be doing pretty well. That's a big, tall order to hold, but it seems to me that is the sense that I think the ALJ came away with, and I think he did recite those portions of evidence that I just talked about. Now, I don't know whether you agree with that or if there's other stuff, and I'm interested in hearing. Your Honor, I agree with the facts that you cited, but the conclusion is not substantiated by the evidence. Even when it was said of him that he was logical, goal-directed, and so on, that does not preclude a finding. In fact, the doctor that you talked about, Dr. Dwiggins, who I believe worked as an understudy for Dr. Rosen, concluded that he had MDD, moderate, with rule-out bipolar disorder, and also alcohol abuse versus dependence in remission. He had a GAF score of 55. Now, the ability to reason linearly does not mean that you can function in the workplace. As a matter of fact, Dr. Rosen and— But if alcohol is not the source of his problems, what is? Well, it is what Dr. Shea said it is. It's major depressive disorder, severe, and this is— Sometimes some of these depressive disorders is a question of what's the cause and what's the effect, but a lot of times these depressive disorders are brought on by alcohol abuse. A lot of times the alcohol abuse is brought on by the depressive disorder, and that's what occurred in this case. Even after— Don't we owe a degree of deference to the rulings below? Yes. You owe a lot of deference to the rulings below, provided that they are based on the evidence, and this was not. How could it not be based on the evidence when the record is peppered with the drinking? I was amazed that somebody could survive with drinking as much as this individual was. There's one situation where there's 8 to 10 drinks a day for over 10 years. This is intermittent, Your Honor. Well, it may be, but, you know, there's drinking a gallon of liquor every two days, and he's talking about— Again, very intermittently, but even—and that raises a very good point. Well, that's right. It is intermittent, and when you follow up on what my colleague, Judge Niemeyer, says, is when he was off the alcohol, apparently he did pretty well, and the doctors, the physicians who were unaware of the alcohol abuse found no disability. The doctors did not find—they found that there was no DAA. They found that DAA was—they found no evidence for DAA. That's exactly what they said. There is no evidence for DAA, and yet the ALJ denies the claim based on DAA. All the doctors said, no, there's no evidence for that. And the question—two questions are raised by— What do you conclude DAA is? Drug and alcohol dependence, in which case— You don't think there was evidence of that in this record? There was evidence of that, but it was not material. It was not material. The doctors who testified or gave opinions for DDS said that this is not a DAA case where DAA is material. Not a single doctor said that DAA was material. Do you think the large—do you think the glaring defect in this decision below is that the— there was a misjudgment as to the materiality of the evidence? Yes. Alcohol, that's what it is. The case is that he just misunderstood the materiality. It's there, but it's not material. And you have to have a doctor to tell you it's material for it to be material? Absolutely. That's the point. Could you observe it? Could you observe it? Or could you glean it from a record that it is material? Not in this case, Your Honor. No, no. Is it possible that it can't be done? That the decision maker can glean it from the record without a doctor's testimony about that specific case? That is exactly what 13-2P concerns. No, but the answer is— It is possible to do that, but— You just say that no doctor said it. Correct. And there was not any evidence from which the decision maker could draw the materiality of this condition. Correct. And the reason why is that the ALJ, in the face of all the— I think, quite frankly, that's the right difficult hill to climb, isn't it? No, Your Honor, because Dr. Shea, who saw—and this is a critical point. Dr. Shea saw the appellant 10 months after he stopped drinking. There was a 10-month period of abstinence. I thought there was a dispute about that, that he said he hadn't been drinking, and then apparently they had records where he came to the hospital drunk and he appeared here drunk. I don't think it was because he even had that much intermittency. It looked to me like some evidence said he was drinking continuously, 8 to 10 drinks a day for 10 years. Your Honor, in that 10-month period, there was no evidence that he drank except for one time in September. Between March of 2011 and January of 2012, there is no evidence in the record that he drank to any extent whatsoever. So, in effect, what you have is a 10-month hiatus in his drinking. And at that point, Dr. Shea, the consulting psychologist, examined him thoroughly and concluded that his major problem was not DAA, but his psychological problems of major depression and— Well, the problem is, again, you can't just separate them out because they all—they impact on one another. But ultimately, Congress was—desired to protect the fiscal integrity of its disability program. And if you allow alcoholism and illicit drug use to become a cause for disability, you're going to wreck it actuarially. And I agree with that. And they want to reserve these limited amount of funds for individuals who are disabled through no fault of—often through no fault of their own. But there must be—if we open the door to these kinds of claims, there must be millions of people out there who have an addiction to either alcohol dependency or an addiction to illegal illicit drugs. And they're all going to be applying for disability benefits. And there's a huge backlog of these cases as it is now. And— Your Honor, I would agree with those sentiments that are expressed by you and written into the law. That was part—what you're saying was written into the law on the contract with America, I think it was back in 1994. Legislation that I happen to agree with. I don't think that people who apply for disability and claim that they're drunkards should automatically get disability. That's not this case. The question is, did the ALJ— Everybody always thinks their case is unique. But I'll tell you what. The next 3,000 litigants will not think that this was particularly unique. But they'll say, you know, this—my alcohol dependency was just like—it was just like this. And you've got this case, this dealt case that say this person is disabled. We've got to look down the road on this thing and find out when we are simply opening the floodgates. And this is one of those cases where we'd be doing just that. Your Honor, I don't think you would be because what happens in this case—you can write this case. Well, it strikes me if you write about no evidence and it was an incorrect decision, maybe the other side will just stand up and concede error. Oh, they're not going to do that. Well, maybe because they look at the record differently. The record shows that after a long period of not drinking, Dr. Shea gave his opinion that he would be disabled, that he could not even do simple work until his condition, his psychological condition was repaired. Thank you, sir. And the ALJ did not give that any credence whatsoever. Thank you, sir. Thank you, Your Honor. Mr. Kelly. Your Honor, may it please the Court, I'm George Kelly, Assistant United States Attorney, appearing for the Secretary of the Department of Social Security. I am unsure at this point whether my opponent has actually attacked the substantive evidence in the case and is asserting that there is not substantial evidence to support the administrative law judge and the commission's decision in this case. It appears that the thrust of the argument is that the claimant, Mr. Delk, was an episodic drinker and that the medical records that appear in the case upon which the administrative law judge relied extensively and recited somehow indicate that Mr. Delk just fell off the wagon now and then. I can't say that I can find how someone could conclude that in light of the number of years over which these records go and the contradictions on that issue. Why don't you tell us what the – he says there's no substantial evidence in the record. As a matter of fact, he pretty much makes the claim there's no evidence in the record for this decision. So why don't you tell us what you think the strongest two, three, or four pieces of evidence in the record are? Do you think the substantial evidence test has met? Yes, Your Honor. What evidence meets that substantial evidence test? Let me address it in terms of the chronology because I think that's important in this case. Between the time that two groups of psychiatrists evaluated Mr. Delk's medical records, these were the consultative reports in February and in May of 2012 by doctors. Did any doctor say he had this condition? He did, yes. Well, the other side said not so. So which doctor said it? Well, he didn't have a good way to – he says there's no evidence in the record. I understood him to say no doctor has said this, so that's why I asked the question, could you glean it from the record otherwise? He said, yes, you could. I said, is there evidence in the record then that the decision-maker could glean? He went, no, there's not. That's his argument, that there's no evidence of this. He said there's no substantial evidence because there's no evidence. Is there evidence? Has a doctor so concluded and so testified? Yes, I think both independent evaluations by state agency physicians or psychologists, as the case may be, both established that. Perhaps more important from the ALJ's perspective, though, is after those decisions were rendered or those reports were issued, a veritable flood of evidence came in as to Mr. Delk's alcohol problems. We're talking about in the year, almost a year, that is between these independent evaluations and the time the hearing was held and the ALJ decided this case. What about Dr. Light's diagnosis? Wasn't the diagnosis of Dr. Light from alcohol dependence? Yes, it was. Well, why wouldn't that be evidence in the record? I absolutely agree that it is. This is a diagnosis out of the Virginia Beach Psychiatric Center by a psychiatrist who was treating Mr. Delk on an inpatient basis after a commitment order had been issued. And what about Dr. Freeman? The same with him, although, Your Honor, I'm not sure how Mr. Delk got to Dr. Freeman. I presume it was through the Virginia Beach community. In your own brief, you say Dr. Freeman found Delk to be suffering from a mood disorder and alcohol dependence. That's correct, yes. That's your brief? That's it, yes. It's there. So there are doctors in the record that are testifying as to this alcohol dependence? Yes. Almost all. Neither of these reports, Dr. Freeman's nor apparently Dr. Light's report out of the Virginia Beach Psychiatric Center, were available to the... And there are additional doctors. When he was admitted to DePaul Medical Center, he was being treated for alcohol withdrawal by Dr. Vicka Sprechkraut. Yes. So the record is replete and just peppered with medical diagnoses of alcohol dependence. Absolutely, Your Honor. When people were unaware of the alcohol dependence, when physicians were unaware of it, and there were no signs of it, they said he's fine. When he was on alcohol, he was in a very unfortunate state. When he was off it, as Neimeyer alluded to this earlier in the argument, when he was off it, he had a constructive contribution to make. Correct. And where he claimed that he was not drinking or had quit drinking, a credibility issue there, but where he claimed it, the doctors often found him depressed or suffering from anxiety but still functioning. This case is really a question of whether you agree with Congress's decision just basically to say that we're not going to regard someone who's disabled, whose disability arises from alcohol dependence or illicit drug use. Now, people may take a different view of that as a matter of policy, but Congress has a right to make that call. And when you look at this record, it seems just right square in the middle of what Congress was trying to get at. That seems to me to be the case, Your Honor. I here today argue in this case and for these reasons the social policy aspect of things or what may happen in the future may be beyond my pay scale, as they used to say in the Army. But, yes, I agree with what the Court is saying. I think the ALJ in this case went to great lengths to painfully, certainly to me in reading it, to painfully set out all the parameters he had to consider and then recite a significant volume of the medical record in support of it. If there's any problem with the ALJ's decision, it would be, I think, that he would quite logically state his conclusion and then go on to state what basis he had for making that conclusion. Whereas a matter of- As long as he states the basis of the order, it isn't going to matter. I would agree. I don't think so. I would have done it differently, but the result is the same. Do you have anything further you wish to add, sir? I think it's all covered in my brief, Your Honor. If there are no further questions from the Court, I will step aside. Thank you. If there are no further questions. Mr. Cortes. Your Honors, Congress's statute is really not in question because, in fact, it's a very good statute. It's a sensible statute, one that I would agree with. But that is not the issue here. There is no question that he has drug dependence. Yes, doctors said that. Whether he has dependence is not the question. The question is whether it's material. And that was a key part of the statute itself, even the statute. And 13- Remember, he went to the hospital one time and said he used to drink, but he doesn't drink anymore. And he said, I had my last drink a week ago. And in the hospital report, they said he was stable and functioning appropriately. And shortly thereafter, he was admitted again and talked about having two gallons every or a gallon every two days of alcohol. That was not during- This is during the summer of 2012, right? That was after. That was in May of 2012. Yes. May of 2012. That was after he had been seen in January 2012 by Dr. Shea following a long period of absence. And then didn't Dr. Brown say he was dependent and the hospital said he was dependent? He was dependent. That's not the issue. The question is whether his dependence is material. It is the issue. That is the issue, whether he is dependent or whether it's not, whether the dependency is the cause of the disability. That's the question. That's right. And that's where there is more than substantial evidence from multiple doctors that the dependency is the cause of his problem and that he does rather well when he's off of it. Your Honor, I would disagree. The DDS doctors all said that this is not a case where DAA is material. They all said that. And in the instance where he saw Dr. Lake after a period where he was committed for detox, Dr. Lake gave as a primary diagnosis that he had bipolar disorder and major depressive disorder. If it's not material, why is he being extensively treated for it and being in one rehabilitation program after another? It's not material because there's something that's even worse. That is that if you removed, if you subtracted out the alcohol use, he would still not be able to find, he could not, according to Dr. Shea, he could not even do simple work. If you removed, if you subtracted out the alcohol, he still has psychological problems that prevent him from doing even simple work. And the ALJ did not deal with that testimony or with that opinion. That's the problem. That's the key in this case, that following a long period of abstinence, Dr. Shea said he has major depression and to the extent that he cannot do simple work. And the ALJ did not deal with that. Again, it's not whether he did a lot of alcohol. He certainly did. It's the question whether he also had a severe mental problem. Even Dr. Lake, who saw him in the midst of his worst condition, he's there in the hospital for detox. Dr. Lake says that the underlying problem, the root cause of the problem, the material cause of his problem, is not dependence but rather bipolar disorder and major depression. That's the key. That's the key. It lies there in those two doctors' opinions, Dr. Shea and also Dr. Lake. The question, yes, the question is which drove the other. The other testimony that when he's not intoxicated, the testimony that he functions appropriately. Is that just catching him in your, you just argued that's just when he's not suffering severely at that moment from bipolar manifestations? I mean, don't you have testimony, evidence in the record that when he is not intoxicated, he's able to function? No, that's not correct. That's what Dr. Shea said. No, no, observations of him. Judge Niemeyer just laid some out when he goes to the hospital and they know he's stable and functioning. He can, at the very least. I'm asking you about that. At the very least, he has, when he's not drinking, according to the ALJ, he has at least moderate problems with concentration. I would submit that it's worse than that, according to the ALJ. If you subtracted out the alcohol use, he has at least moderate concentrational problems. So he's not just fine. But the ALJ in saying that still found there were jobs he could do. Without the alcoholism, he wasn't disabled. The ALJ never submitted that problem to the V.E. He never mentioned to the V.E. as he was required to do under the Mascio case. He never even mentioned the problem of moderate concentrational limitations. Never mentioned to the V.E. that he had trouble staying on task. That didn't even come up, so the ALJ could not rely on the V.E. Thank you. Thank you, Your Honor. We'll come down and greet counsel and move into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Dennis W. Shedd